# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

———————————————————

Christopher Dickess,
      Petitioner,

      vs.                          Case No. 1:09cv635
                                      (Barrett, J.; Wehrman, M.J.)

Warden, Ross Correctional
Institution,
      Respondent.

———————————————————

## REPORT AND RECOMMENDATION

———————————————————

Petitioner, an inmate in state custody at the Ross Correctional Institution in Chillicothe, Ohio, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter is before the Court on the petition (Doc. 1) and respondent's "Answer/Return Of Writ" with exhibits (Doc. 6), as well as the trial transcript filed by respondent as a supplement to the return of writ (Doc. 7).

## Background

On August 30, 2006, the Scioto County, Ohio, grand jury returned an indictment charging petitioner with one count of aggravated burglary in violation of Ohio Rev. Code § 2911.11(A)(1); one count of aggravated robbery in violation of Ohio Rev. Code § 2911.01(A)(1); one count of felonious assault in violation of Ohio Rev. Code § 2903.11(A); one count of theft in violation of Ohio Rev. Code § 2913.02(A); and a firearm specification. (Doc. 6, Ex. 1). The charges stemmed from a home invasion on April 25, 2006 when a resident was in the house.

Prior to trial, petitioner's counsel filed a motion to suppress evidence stemming from the resident victim's identification of petitioner's voice from a tape-recording that had been obtained by

investigating police officers.  (*Id.,* Ex. 2).  It appears from the record that a hearing on the motion

was scheduled for November 1, 2006; however, no hearing was held, and the trial court never ruled

on the motion.  (*See id.*, Brief, pp. 4-5 & Ex. 3).

Following a jury trial, petitioner was found guilty of aggravated burglary, aggravated robbery

and theft, as well as the firearm specification; the jury was unable to reach a verdict on the felonious

assault charge.  (*See id.,* Ex. 4).  In a Judgment Entry filed on November 29, 2006, petitioner was

sentenced to the following consecutive terms of imprisonment totaling 23.5 years:  a nine-year prison

term for aggravated burglary, a ten-year prison term for aggravated robbery, an eighteen-month

prison term for theft, and a mandatory three-year prison term for the firearm specification.  (*Id.*).

With the assistance of new counsel for appeal purposes, petitioner timely appealed to the

Ohio Court of Appeals, Fourth Appellate District.  (*Id.*, Ex. 5).  In the appellate brief, he presented

six assignments of error, including the following claims:

> 1.  The trial court erred when it overruled the appellant's motion to suppress the
> alleged victim's pre-trial voice identification the[r]eby violating appellant's due
> process rights gu[a]ranteed by the Fifth and Fourteenth Amendments of the United
> States Constitution.
>
> 2.  The trial court committed plain error when it gave a jury instruction concerning
> the use of the appellant's prior conviction for impeachment purposes when appellant
> did not testify.
>
> ****
>
> 6.  Appellant's right to a fair trial was prejudiced by ineffective assistance of counsel.

(*Id.,* Ex. 6).

On January 3, 2008, in a published opinion, *State v. Dickess,* 884 N.E.2d 92 (Ohio Ct. App.

4 Dist. 2008), the Ohio Court of Appeals overruled petitioner's assignments of error and affirmed

the trial court's judgment.  (*Id.*, Ex. 9).  In its decision, the court also made the following factual

findings, which are presumed correct under 28 U.S.C. § 2254(e)(1),[1] based on the evidence presented at trial regarding the circumstances that led to petitioner's indictment and conviction:

> On the morning of April 25, 2006, two individuals entered the home of Michael Wright, his wife, and his son, Lucas.  At the time, neither Michael nor his wife was home.  Lucas was home alone, sleeping in his bed, and awoke to a loud thud.  He then saw a man, who was wearing a mask, in his bedroom.  The man was pointing a gun at his face.  The man directed Lucas not to look at him and not to move.  He then ordered Lucas to stand up, put his hands behind his head, and face the window.  The man told Lucas to lay down and stated that if Lucas resisted, he would kill him.  The man asked Lucas whether there were any drugs, weapons, or money in the house and bound Lucas's hands behind his back.  He told Lucas that if he lied, he would kill him.  The man later led Lucas downstairs and told him to lay down.  Lucas heard two individuals talking and ransacking the home.  He heard footsteps coming toward him and saw someone lean over him.  The next awareness he had, his head hurt and he thought that the man had shot him.  He eventually learned that one of the individuals hit him with a liquor bottle.  The man then bound Lucas's feet and tied his arms even tighter.  He dragged Lucas down the hallway and told Lucas that if he moved, they would kill him.
>
> The house went silent for a period of time, and Lucas eventually yelled, "hello," but did not hear a response.  He managed to struggle to his feet and to reach his father's truck.  A neighbor then spotted him and helped him to his nearby aunt's house, where they summoned help.
>
> At the hospital, doctors discovered that Lucas suffered multiple skull fractures and swelling of the brain due to a concussion.  While there, Lucas met with the investigating officer, Scioto County Sheriff's Detective Denver Triggs.  He told the detective that a couple of days earlier, someone named "Chris" stopped by the house, looking for Lucas's father.  Detective Triggs then discovered Dickess's name and began investigating further.
>
> A few days later, Detective Triggs met with Lucas and played a surreptitious audio recording of a male voice and asked Lucas if he could identify the voice.  With certainty, Lucas identified the voice as Dickess's.

---

[1]28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence."  Because petitioner has neither cited nor presented any evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, the state appellate court's factual findings are presumed to be correct. *See McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir.), *cert. denied,* 543 U.S. 892 (2004).

****

At trial, Lucas testified that he obeyed the intruder's instructions because "he had a gun [and he] wasn't going to test that." Lucas explained that Detective Triggs played a voice recording for him to see if he could identify the voice. Lucas told the detective, "without a doubt, it's the same voice" that he heard during the home invasion. In explaining his certainty, Lucas stated: "It's a very distinct voice, but the way he pronounces some of his vowel sounds, like when he asked if I thought he was stupid, the way he said stupid I mean it's unmistakable and again listening to the recording that he had, the vowel sounds matched up without any doubt, that was the same voice." He identified the voice as Dickess's voice, and he stated that he did not have any doubt that he was the man in his home on the morning of April 25. Lucas further explained that when he first listened to the tape, he recognized the voice within a minute. He stated that the "tone" and "uniqueness of his voice [were] right, but [he] listened a little bit longer just to make sure the syllables and the vowels were there." Lucas testified that he saw no need to listen to any other voice samples, because he was "100% sure" that the voice belonged to Dickess. He stated that he was certain about his voice identification, because the man had a gun pointed at him and he listened "very clear[ly]."

Angel Griffith testified that Dickess is her cousin. She explained that her husband, Bob, had mentioned that there was a reward for the stolen items while in the presence of Frankie Stephenson, Dickess's sister. Frankie later called and asked for the Wrights' phone number. Angel then called the Wrights and advised them that Frankie wanted to set up a meeting. Angel stated that Michael Wright and Frankie met at her house. She testified that Michael showed Frankie a list of the stolen items. Frankie looked at the list and stated that several of the DVDs were at her sister's house and that she would try to get the DVDs and put them in a zip lock bag so they could be fingerprinted. She also apologized for what had happened. When Angel saw Frankie about a week after the meeting, Frankie stated that her sister's home had been broken into and that the items were stolen.

Michael Wright testified that Dickess had worked for him. He stated that the home intruders stole (1) a nickel plated .38 revolver, valued at approximately $850, (2) his wife's "one of a kind necklace that was made from a ring" that her grandmother left her, valued at $4,500, (3) $150 in cash, and (4) several video games and DVDs, valued around $1,500. Michael testified that he tried to recover those items from Frankie, Dickess's sister. He explained that Frankie called him and stated that she wanted to talk to him and asked him to bring a list of the stolen items. Michael offered to buy back anything on the list. Frankie stated that she thought "they had some of that stuff and that she would get back to me." However, Frankie never contacted him again.

When the state called Frankie to the stand, she denied claims that she offered to help recover the Wrights' stolen property.

4

Detective Triggs testified that when Lucas told him that a man by the name of "Chris" stopped by the house a few days before the invasion, he then discovered that it was Dickess.  Detective Triggs stated that he ran a "CCH" and found that Dickess had a history of aggravated robbery and burglary.  After Dickess was arrested, Detective Triggs conducted two interviews with Dickess.  He recorded both interviews, which were played for the jury but not transcribed.  During these interviews, Dickess does not confess to being involved in the home invasion at the Wrights' home.  However, he expresses knowledge of intimate details of the crime, supposedly gained through one of his acquaintances.  Also during these interviews, both Dickess and Detective Triggs make numerous references to Dickess's prior convictions and recent involvement in other crimes.

After the state rested, Dickess presented the testimony of two witnesses, in an attempt to establish that he was at home during the time of the home invasion at the Wrights' home.

(*Id.,* pp. 2-3).

With the assistance of new counsel from the Ohio Public Defender's Office, petitioner timely appealed to the Ohio Supreme Court; in the memorandum in support of jurisdiction, he presented the following propositions of law:

1.  A party may not introduce prior convictions to impeach a non-testifying witness when the party introduced the witness's statement only as an out-of-court admission by a party opponent.

2.  A trial court commits plain error when it gives a jury instruction concerning the use of a prior conviction introduced to impeach a defendant who did not testify.

3.  The doctrine of invited error does not apply to remarks made in opening statement....

4.  A voice identification procured by playing a single voice exemplar to a witness is unnecessarily suggestive and therefore inadmissible.

5.  Trial and appellate counsel are ineffective when their deficient performance prejudices a defendant.

(*Id.,* Ex. 11).

On June 4, 2008, the Ohio Supreme Court denied petitioner leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question."  (*Id.,* Ex. 13).

5

Petitioner filed the instant federal habeas corpus petition in August 2009.  (*See* Doc. 1).

Petitioner alleges three grounds for relief:

> **Ground One:**  Petitioner's right to due process of law, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, was violated when the jury was improperly instructed that it could consider prior convictions as evidence impeaching Petitioner's out of court statements.
>
> **Ground Two:**  Petitioner was denied the right to due process of law, in violation of the Fifth and Fourteenth Amendments to the United States Constitution[,] when police employed an unduly suggestive identification procedure.
>
> **Ground Three:** Petitioner was denied the effective assistance of trial and appellate counsel, in violation of the Sixth and Fourteenth Amendments to the United States Constitution[,] when their defici[en]t performance prejudiced Petitioner.

(*Id.*, pp. 5-6, 8, 16-18).

## OPINION

### A.  Ground One, Which Was Raised As A State-Law Issue For "Plain Error" Review On Direct Appeal, Is Waived; Ground Three, Wherein Petitioner Alleges That Counsels' Ineffectiveness Constitutes Cause For His Defaults In The State Courts, Lacks Merit

In Ground One of the petition, petitioner alleges that he was denied due process when the trial court improperly instructed the jury that it could consider evidence of his prior convictions for the purpose of impeaching his out-of-court statements, which were made in two recorded police interviews that were played to the jury at trial.  (Doc. 1, pp. 5, 16).

Apparently, defense counsel did not object to the jury instruction when it was given.  On direct appeal, petitioner argued, however, that the trial court committed "plain error."  (*See* Doc. 6, Ex. 6, pp. 4-5; Ex. 11, pp. 7-8).  Petitioner contended that because he did not testify at trial, the evidence of his prior conviction "should not have been admitted and there should have been no mention of [it] by the court."  (*Id.,* Ex. 6, p.5; *see also* Ex. 11, pp. 7-8).

The Ohio Court of Appeals was the only state court to discuss the merits of petitioner's

claim.  In addressing the issue, the court made findings of fact, which are presumed correct,[2] and

ruled in relevant part as follows:

> In his second assignment of error, Dickess asserts that the trial court plainly erred by instructing the jury on his prior conviction for impeachment purposes when he did not testify at trial.  Specifically, he complains that the following jury instruction was erroneous:  "Testimony was introduced that Christopher Dickess was convicted of a criminal act.  This testimony may be considered for the purpose of helping you test the credibility or weight to give to his statements.  It cannot be considered for any other purpose."  Dickess essentially asserts that because he did not testify, the court should not have allowed evidence of his prior conviction during the jury instructions.
>
> The state asserts that the trial court properly instructed the jury and properly allowed the evidence.  It observes that although Dickess did not testify, the state introduced two videotaped recordings of his interviews with [Scioto County Sheriff's] Detective [Denver] Triggs.  The state argues that the jury was entitled to consider his prior conviction in assessing the credibility of the statements he gave to Detective Triggs and that the court appropriately so instructed the jury.
>
> A
> PLAIN ERROR
>
> Dickess did not object to the court's jury instruction concerning his prior conviction.  Thus, we only recognize the error if it constitutes plain error....
>
> A defective jury instruction does not rise to the level of plain error unless the defendant shows that the outcome of the trial clearly would have been different but for the alleged erroneous instruction....
>
> B
> STANDARD FOR REVIEWING JURY INSTRUCTIONS
>
> Crim.R. 30(A) requires a trial court to "fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact-finder."...  In determining whether to give a requested instruction, a trial court may inquire into the sufficiency of the evidence to support the requested instruction....  A trial court is vested with discretion to determine whether sufficient evidence was presented at trial to require a particular jury instruction....  Thus, in our review, we must determine whether the trial court abused its discretion by finding that the evidence supported the jury instruction....  An abuse of discretion exists if the trial court's attitude was unreasonable, arbitrary or unconscionable....

---

[2]*See supra* p. 3 n.1.

7

Because the propriety of the trial court's prior conviction jury instruction rests upon the propriety of the court's allowance of that evidence, we first must ascertain whether the court plainly erred by admitting the evidence of Dickess's prior conviction.

C
EVIDENCE OF PRIOR CONVICTION

First, we observe that not only did Dickess's counsel fail to object to the testimony concerning Dickess's prior conviction, but he also volunteered the information during his opening statement. "Under the invited error doctrine, a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make."...  Consequently, because Dickess's counsel volunteered the information regarding the prior conviction, Dickess invited any error associated with the trial court's admission of the evidence....

Even if Dickess had not invited the error, the trial court did not abuse its discretion by admitting the evidence under Evid.R. 609(A)(2) and Evid.R. 806.

The admission or exclusion of evidence rests within the sound discretion of the trial court....  Absent an abuse of discretion, an appellate court will not disturb a trial court's ruling regarding the admissibility of evidence....

"When an accused testifies at trial, Evid.R. 609(A)(2) allows the state to impeach the accused's credibility with evidence that the accused was convicted of an offense punishable by imprisonment in excess of one year and if the court determines that the probative value of the evidence outweighs the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."...  Even when the accused chooses not to take the stand, thereby ostensibly avoiding the potential for the prosecution to introduce impeachment evidence, such as prior convictions, those prior convictions may still be introduced into evidence through Evid.R. 806.  See Giannelli and Snyder, Ohio Evidence (2001), Sections 609.7 and 806.5 (stating that "an accused may be impeached even though he never testified" and that "Rule 806 has even been held to permit impeachment of a defendant whose out-of-court statements were offered by the prosecution *** and thus has done nothing to put his credibility at issue"); Katz and Giannelli, Evidence Rule 806 and the Problem of Impeaching the Nontestifying Defendant (1995), 56 Ohio St. L.J. 495, 501 (stating that "even a criminal defendant who chooses not to testify may nevertheless be subject to impeachment with his prior convictions if he becomes a declarant at his trial," but criticizing this result).

In *State v. Block* (Apr. 11, 1991), Auglaize App. No. 2-90-4, [1991 WL 53735], the court determined that the trial court did not improperly instruct the jury regarding the defendant's prior conviction when the evidence of his prior conviction was introduced through Evid.R. 609(A)(2) and Evid.R. 806.  The court explained: "Since

Evid.R. 609 permits impeachment of the Appellant by use of prior criminal convictions the same impeachment is permitted of the declarant of a hearsay statement under Evid.R. 806 as if the Appellant were testifying." But, see, *State v. Martin* (June 19, 1987), Greene App. No. 86CA59, [1987 WL 12956] (stating that the use of prior convictions to impeach declarant-defendant who chose not to testify "is beyond the scope of Evid.R. 609(A), and without question, [the trial court's] instruction was erroneous," but otherwise upholding the court's jury instruction).

Here, Dickess chose not to testify. However, the state used his prior out-of-court statements at trial. Thus, under Evid.R. 609(A)(2) and Evid.R. 806, the trial court could allow evidence of Dickess's prior conviction. Because the court properly allowed the evidence, it appropriately gave the jury a limiting instruction regarding his prior conviction.... Therefore, Dickess cannot show that the trial court plainly erred by giving the jury the limiting instruction.

Accordingly, we overrule Dickess's second assignment of error.

(*Id.*, Ex. 9, pp. 5-6) (case citations and footnote omitted).

As an initial matter, petitioner is not entitled to federal habeas relief to the extent he alleges in Ground One that the trial court misapplied or otherwise violated Ohio's evidentiary rules in allowing petitioner's prior convictions to be considered by the jury for the limited purpose of impeaching petitioner's out-of-court statements. A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions"). Therefore, the federal habeas court has authority to consider only whether the alleged error violated petitioner's federal constitutional right to due process.

Respondent contends that any cognizable federal claim for relief alleged in Ground One is waived, however, because (1) petitioner's trial counsel failed to object at trial to the challenged jury instruction, and the Ohio Court of Appeals relied on that procedural default when it reviewed the

issue for "plain error" on direct appeal; and (2) petitioner did not fairly present the claim as an issue of federal constitutional dimension to the state courts, but only as error under Ohio law. (Doc. 6, Brief, pp. 10-15). Both of respondent's arguments have merit.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must first fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). A constitutional claim must be presented to the state's highest court in order to satisfy the fair presentation requirement. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall*, 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied*, 474 U.S. 831 (1985). If a petitioner fails to fairly present a constitutional claim through the requisite levels of state appellate review to the state's highest court, or commits some other procedural default relied on to preclude review of the merits of the claim by the state's highest court, the claim may be deemed waived for purposes of federal habeas review. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

If, because of a procedural default, the petitioner has not had a claim considered by the state's highest court and he can no longer present the claim to the state courts, the claim is barred from review in a federal habeas proceeding unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error, or that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129

(1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

It is well-settled that in order to satisfy the "fair presentation" requirement, the habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), *cert. denied,* 532 U.S. 958 (2001); *Franklin v. Rose,* 811 F.2d 322, 325 (6th Cir. 1987).  This means the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law. *Franklin,* 811 F.2d at 325 (citing *Koontz v. Glossa,* 731 F.2d 365, 368 (6th Cir. 1984)); *see also Prather v. Rees,* 822 F.2d 1418 (6th Cir. 1987).

The use of a "generalized catch-all phrase," which merely alleges the denial of a fair trial under the United States Constitution, does not adequately alert the state courts of the constitutional nature of the claim where the "only legal theory presented to the state courts was predicated entirely upon state evidentiary law." *Franklin,* 811 F.2d at 326.  General statements that the petitioner was denied a "fair trial" or "due process" are not sufficient to put state courts on notice of a specific federal constitutional claim in the absence of citation to case-law employing federal constitutional analysis.  *Petrucelli v. Coombe,* 735 F.2d 684, 688-89 (2nd Cir. 1984).

In addition, it is well-settled under the procedural-default doctrine that the federal habeas court may be barred from considering an issue of federal law from a judgment of a state court if the judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision.  *Harris,* 489 U.S. at 260-62.  The Supreme Court has stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750.  The "adequate and independent state ground" doctrine has been applied to state court decisions refusing to address the merits of a federal claim because of violations of state procedural rules, including the failure to make a timely objection at trial.  *Harris,* 489 U.S. at 261; *Sykes,* 433 U.S. at 86-87; *McBee,* 763 F.2d at 813.

In the usual case, the adequate and independent state ground doctrine will not apply to bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on a state procedural bar. *Harris,* 489 U.S. at 263; *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).  In *Harris,* the Supreme Court noted, however, that the rule requiring that the state court plainly state that its judgment rests on a state procedural default "applies only when a state court has been presented with the federal claim" raised by the state prisoner as a ground for federal habeas relief.  *Harris,* 489 U.S. at 263 n.9; s*ee also Teague v. Lane*, 489 U.S. 288, 299 (1989) (plurality opinion) ("The rule announced in *Harris* ... assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding.").  The *Harris* Court further noted: "Of course, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred."  *Harris*, 489 U.S. at 263 n.9.

In this case, petitioner committed the first procedural default when he failed to object at trial to the challenged jury instruction or, for that matter, to any of the statements made during the trial referring to petitioner's criminal record.  Under Ohio law, the failure to assert a contemporaneous objection to a perceived error occurring at trial constitutes a procedural bar to appellate review, except to the extent that limited review of the record is allowed under Ohio R. Crim. P. 52 to ensure that the alleged error does not amount to a "plain error" affecting a substantial right.  *Scott v.*

*Mitchell*, 209 F.3d 854, 866 (6th Cir.) (citing *State v. Williams*, 364 N.E.2d 1364 (Ohio 1977) (citations omitted), *judgment vacated in part on other grounds,* 438 U.S. 911 (1978)), *cert denied*, 531 U.S. 1021 (2000); *see also State v. Ballew*, 667 N.E.2d 369, 379 (Ohio 1996), *cert. denied,* 519 U.S. 1065 (1997). The contemporaneous objection bar to review has been recognized as an adequate and independent state ground, involving a "firmly established and regularly followed state practice," and a state appellate court's limited review for plain error is viewed "as the enforcement of [the] procedural default." *See, e.g., Keith v. v. Mitchell,* 455 F.3d 662, 673 (6th Cir. 2006) (citing *Scott,* 209 F.3d at 866), *cert. denied,* 549 U.S. 1308 (2007); *see also Mason v. Mitchell,* 320 F.3d 604, 635 (6th Cir. 2003); *Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir. 2001).

Here, because petitioner failed to lodge a contemporaneous objection at trial, the issue was presented to and considered by the Ohio Court of Appeals as a procedurally-defaulted claim subject to only limited plain-error review under Ohio R. Crim. P. 52. (*See* Doc. 6, Ex. 6, p. 4; Ex. 9, p. 5). Therefore, as respondent has argued, petitioner's procedural default at the trial level may serve as a bar to review in the instant action.

Petitioner's second procedural default occurred on direct appeal, and stemmed from petitioner's failure to fairly present the claim to the Ohio Court of Appeals as a federal constitutional issue and not merely as an issue arising under state law.  In his appellate brief to the Ohio Court of Appeals, petitioner did not even generally allege that the challenged jury instruction deprived him of his due process right to a fair trial.  Instead, he essentially argued that (1) Ohio R. Evid. 609(A) did not permit his prior convictions to be used for impeachment purposes because he did not testify at trial; and (2) the improper instruction resulted in prejudice because under Ohio R. Evid. 609(A)(2), "the danger of unfair prejudice, of confusion of the issues, or of misleading the jury" outweighed "the probative value of the evidence" in violation of Ohio R. Evid. 403(B). (Doc. 6, Ex. 6, pp. 4-5).  Because the only legal theories presented to the Ohio Court of Appeals thus were

predicated entirely on state law, the state appellate court did not consider whether the alleged error

violated due process and only addressed whether reversible error under Ohio law had occurred.[3]

Petitioner did allege in the memorandum in support of jurisdiction on further appeal to the

Ohio Supreme Court that "the failure to properly instruct the jury violated federal due process and

the federal constitutional rights to due process, to trial by jury, to present a defense, and to the

presumption of innocence." (*See id.*, Ex. 11, p. 8). However, even assuming that general statement

was sufficient to put the state supreme court on notice of a federal claim, the court lacked jurisdiction

to consider such a claim because it had not been asserted as an issue for review at the intermediate

level by the Ohio Court of Appeals. *See Leroy,* 757 F.2d at 99; *Fornash v. Marshall,* 686 F.2d 1179,

1185 n.7 (6th Cir. 1982), *cert. denied,* 460 U.S. 1042 (1983); *see also* Ohio Const. art. IV, § 2(B)(2);

*State v. Jones,* 211 N.E.2d 198, 199 (Ohio 1965), *cert. denied,* 383 U.S. 918, 951 (1966).

By thus failing to provide the state's highest court with an opportunity to correct any error

of federal constitutional dimension which may have arisen from the trial court's evidentiary rulings,

petitioner  has waived the federal issue unless he can show cause for his default and actual prejudice

as a result of the alleged error, or that failure to consider the constitutional claim will result in a

"fundamental miscarriage of justice." *See Coleman,* 501 U.S. at 750; *see also Murray,* 477 U.S. at

---

[3]A state appellate court deciding whether a trial court abused its discretion or otherwise committed prejudicial error under state law faces a different legal question than a state court deciding whether such error amounted to a constitutional due process violation. *Petrucelli*, 735 F.2d at 690 (citing *Steele v. Taylor,* 684 F.2d 1193, 1206 (6th Cir. 1982), *cert. denied,* 460 U.S. 1053 (1983)). In this case, because the Ohio Court of Appeals was not made aware of any constitutional issues, it considered and determined the claim as argued by petitioner, solely in terms of state law – *i.e.*, concluding that the trial court did not abuse its discretion or otherwise plainly err in allowing petitioner's prior convictions to be considered by the jury for impeachment purposes under Ohio R. Evid. 609(A)(2) and 806 and in giving a "limiting instruction" to the jury to that effect.  (*See* Doc. 6, Ex. 9, pp. 5-6).

485; *Isaac,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.

Petitioner has not demonstrated that failure to consider the constitutional claim will result in a "fundamental miscarriage of justice," or in other words, that the alleged error "probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995). However, in Ground Three of the petition, petitioner has argued as "cause" for his procedural default that his trial and appellate attorneys were ineffective in failing to preserve the constitutional issue for state appellate and federal habeas corpus review. (Doc. 1, pp. 8, 19).

Ineffective assistance of counsel may constitute cause for a procedural default. *Murray,* 477 U.S. at 488. To establish that his trial and appellate attorneys were constitutionally ineffective, petitioner must demonstrate that (1) they made such serious errors they were not functioning as "counsel" guaranteed by the Sixth Amendment; *and* (2) their allegedly deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). Under the first prong of the *Strickland* test, petitioner must show that counsels' representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id.* at 688. To satisfy the second "prejudice" prong of the *Strickland* test, petitioner must demonstrate that a "reasonable probability" exists that, but for counsels' errors, the trial/appeal outcomes would have been different. *See id.* at 694. Petitioner has met his burden if he shows that the trial/appeal results would "reasonably likely have been different absent the errors." *Id.* at 695.

Here, petitioner has not established that either his trial counsel or his appellate counsel was ineffective under *Strickland.*

First, petitioner has not demonstrated that his trial attorney's representation fell below an

objective standard of reasonableness under the first prong of the *Strickland* test.  Petitioner has not argued or otherwise demonstrated that his prior criminal record was inadmissible in and of itself. Indeed, petitioner himself apparently referred to his record in his videotaped interviews with the police, which were played at trial.  Moreover, Detective Triggs referred generally to petitioner's criminal history to properly explain how petitioner was developed as a suspect, as well as the context in which the audio recording of petitioner's voice was obtained for identification purposes.  (*See* Doc. 7, Trial Tr. 206-11).  In the absence of evidence in the record to suggest any impropriety in the few vague references made at trial to petitioner's prior criminal activities, petitioner's trial counsel did not act unreasonably in failing to object to the limiting instruction that was later given, apparently for petitioner's benefit to ensure that his prior record would be properly considered by the jury only for impeachment purposes and not as substantive evidence of guilt on the criminal charges stemming from the April 25, 2006 home invasion.

In any event, even assuming that trial counsel erred in failing to challenge the "other acts" testimony presented at trial, petitioner is unable to demonstrate under the second prong of the *Strickland* test that the trial outcome would reasonably likely have been different even if no references to petitioner's prior record were allowed to be introduced.  Indeed, it is highly unlikely that jury would have reached a different verdict given the victim's voice-identification of petitioner as the perpetrator who entered his bedroom, pointed a gun in his face, bound his hands behind his back, and ransacked the house with another individual; petitioner's own statements to the police demonstrating "knowledge of the intimate details of the crime;" and  Angel Griffith's testimony about the meeting between petitioner's sister, Frankie Stephenson, and the homeowner at Stephenson's instigation, where she apologized for "what had happened" and expressed that she

16

would try to return some of the stolen items.  As the Ohio Court of Appeals reasonably concluded in rejecting petitioner's ineffective assistance of counsel claim on direct appeal: "[E]ven without evidence of Dickess's involvement in other crimes, the victim's positive identification, if believed, overwhelmingly proves Dickess's guilt.  Thus, Dickess cannot establish prejudice."  (Doc. 6, Ex. 9, p. 10).

Second, petitioner's appellate counsel did not act unreasonably when she failed to fairly present the federal, due process issue in arguing on direct appeal that the challenged jury instruction amounted to "plain error" under Ohio law.  To establish a due process violation, the petitioner must demonstrate that the alleged error was "so egregious" when viewed in the context of the entire trial record "as to have nullified the legitimacy of the properly admitted substantive evidence of guilt." *Lundy v. Campbell,* 888 F.2d 467, 472-43 (6th Cir. 1989) (citing *Payne v. Janasz,* 711 F.2d 1305, 1310 (6th Cir.), *cert. denied,* 464 U.S. 1019 (1983)), *cert. denied,* 495 U.S. 950 (1990).  Upon review of the trial record, including the strong evidence of petitioner's guilt on the criminal charges, the undersigned is convinced that petitioner was not deprived of a fundamentally fair trial as a result of any error by the trial court in allowing the jury to consider evidence of his prior convictions for impeachment purposes only.  Petitioner's appellate counsel, therefore, was not ineffective in failing to raise the meritless claim.

Indeed, petitioner's counsel reasonably asserted a stronger argument for reversible error based on the interplay between Ohio R. Evid. 609(A)(2) and Ohio R. Evid. 806 and whether those rules should extend to permit the prior-conviction impeachment of out-of-court statements made by a non-testifying defendant.  The Ohio Court of Appeals indicated in its direct appeal decision that the state-law evidentiary question posed a closer issue because some courts and authorities had

expressed concerns about such a result. (*See* Doc. 6, Ex. 9, p. 6). As the Supreme Court has stated: "Th[e] process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes,* 463 U.S. 745, 751-52 (1983)).

Finally, the Court concludes that, in any event, petitioner is unable to demonstrate that appellate counsel's alleged error prejudiced the defense by undermining the reliability of the appeal result under the second prong of the *Strickland* test. The Ohio Court of Appeals determined that the trial court acted well within its discretion in both allowing the prior conviction evidence and "appropriately [giving] the jury a limiting instruction" to consider such evidence only for impeachment purposes. (Doc. 6, Ex. 9, p. 6). Therefore, it is highly unlikely that the Ohio Court of Appeals would have been persuaded by the additional argument of constitutional dimension challenging the fairness of the trial.

Accordingly, in sum, petitioner is not entitled to habeas corpus relief based on his claim in Ground One challenging the trial court's instruction to the jury limiting its consideration of the prior conviction evidence for impeachment purposes only. The claim is not cognizable to the extent petitioner alleges the trial court abused its discretion or otherwise plainly erred under Ohio law. Moreover, petitioner has waived any claim of federal constitutional error because he failed to fairly present the federal issue to the state courts and has not demonstrated cause for the procedural default or that a fundamental miscarriage of justice will occur if the federal claim is not considered herein.

**B. Petitioner Is Not Entitled To Relief Based On The Claim Alleged In Ground Two Challenging The Admission Of The Victim's Voice-Identification Testimony**

In Ground Two of the petition, petitioner alleges that his right to due process was violated

when the trial court failed to suppress the victim's voice-identification testimony on the ground that the "police employed an unduly suggestive identification procedure." (Doc. 1, pp. 6, 17-18). The constitutional claim, which was raised on direct appeal to both the Ohio Court of Appeals and Ohio Supreme Court, is subject to review on the merits.

The Ohio Court of Appeals, which was the only state court to issue a reasoned decision addressing the merits of the claim, overruled the assignment of error, reasoning in pertinent part as follows:

> Regarding a motion to suppress a victim's pre-trial voice identification of a suspect, the Ohio Supreme Court has stated that "due process requires a court to suppress her identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances."... Thus, a trial court need only suppress an identification when (1) the identification procedures that the law enforcement officers used were unnecessarily suggestive, and (2) the identification was unreliable under the totality of circumstances.
>
> Although courts have criticized the practice of using a single voice exemplar or photo when seeking a witness identification as suggestive, this practice is not per se improper and does not necessarily result in the inadmissibility of the identification.... Moreover, notable flaws in the identification procedure do not, per se, preclude admission of the subsequent in-court identification.... Instead, the ultimate inquiry is "whether, based on the totality of circumstances, there is a very substantial likelihood of misidentification."... As noted in *Manson* [*v. Brathwaite,* 432 U.S. 98, 114 (1977)], "reliability is the linchpin in determining the admissibility of identification testimony." Thus, even if the identification procedure was suggestive or contained other flaws, the subsequent identification is admissible as long as it is reliable....
>
> An identification is reliable as long as the police procedure used does not create "'a very substantial likelihood of irreparable misidentification.'"... In evaluating whether the procedure created a very substantial likelihood of irreparable misidentification, courts should look to the following "key factors": (1) the witness's opportunity to view (in case of a voice identification, to hear) the defendant during the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the suspect; (4) the witness's certainty; and (5) the time elapsed between the crime and the identification....
>
> In [*State v. Waddy*, 588 N.E.2d 819 (Ohio 1992)], the court determined that a witness's identification, although unnecessarily suggestive, did not create a very

19

substantial likelihood of misidentification. The court noted that the witness "had an
excellent opportunity to hear the burglar's voice. He was in her home for half an
hour and spoke several times. She thoroughly described the burglar's manner of
speaking and remembered what he said, indicating a high attention level. After [the
witness] identified the voice, a detective told her to 'make sure that was the same
voice that I heard the night that I was attacked'; she did not waver in her
identification. Like the victim in *Neil* [*v. Biggers,* 409 U.S. 188, 200 (1972)], [this
victim] 'was no casual observer,' but the victim of a protracted invasion of her home
coupled with a physical assault." *Waddy,* [588 N.E.2d at 831].

The court further observed that "[t]wo negative factors exist. [The victim's] fear
could have distorted her auditory perception. Also, nearly two months elapsed
between crime and identification; however, in *Neil*[,] factors favoring reliability
outweighed a seven-month gap. On balance, we find no 'very substantial' likelihood
of misidentification." *Waddy,* [588 N.E.2d at 831-32] (citations omitted).

Here, even if the voice recording was unnecessarily suggestive, it was not so
suggestive as to create a very substantial likelihood of misidentification.... Like the
witness in *Waddy*, Wright had an excellent opportunity to hear the burglar's voice.
This person was in the home for somewhere around half an hour and spoke many
times to Wright, giving commands. Wright thoroughly described the burglar's
manner of speaking and remembered what he said, indicating a high attention level.
After Wright identified the voice, he never wavered in his identification. Wright
"was no casual observer," but the victim of a protracted home invasion coupled with
a physical assault.... Furthermore, only a matter of days passed between the home
invasion and his voice identification. The two negative factors, Wright's fear and his
head injury, are not sufficient to call the reliability of his identification into question.
Therefore, the practice of playing only one voice for Wright did not create a very
substantial likelihood of irreparable misidentification.

(Doc. 6, Ex. 9, p. 4) (citations omitted).

In this federal habeas case, the applicable standard of review governing the adjudication of

the constitutional claim addressed on the merits by the Ohio Court of Appeals is set forth in 28

U.S.C. § 2254(d). Under that provision, a writ of habeas corpus may not issue with respect to any

claim adjudicated on the merits by the state courts unless the adjudication either:

(1) resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established federal law, as determined by the United States
Supreme Court; or

20

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

A legal principle is "clearly established" for purposes of habeas corpus review "only when it is embodied in a holding of [the Supreme] Court." *Thaler v. Haynes,* 130 S.Ct. 1171, 1173 (2010). "[A] federal habeas court reviewing the state-court judgment must apply the law that controlled 'at the time his state-court conviction became final.'" *Miller v. Stovall,* 608 F.3d 913, 919 (6th Cir. 2010) (quoting *Williams v. Taylor,* 529 U.S. 362, 390 (2000)).

In addition, the "contrary to" and "unreasonable application" clauses set forth in 28 U.S.C. § 2254(d)(1) have independent meanings:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts...  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case....  The focus on the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and ... an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002) (citation omitted).  Under § 2254(d)(1)'s "unreasonable application" clause, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

In this case, the Ohio Court of Appeals correctly identified the applicable well-established standards of review adopted by the Supreme Court in adjudicating petitioner's due process claim.

Upon review of the trial transcript, this Court concludes that the state appellate court's adjudication of the claim involved a reasonable application of those standards and was based on a reasonable determination of the facts in light of the evidence presented at trial.

As the court recognized, a conviction based on identification testimony that follows a pretrial identification violates due process when "the pretrial identification procedure is so 'impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Ledbetter v. Edwards,* 35 F.3d 1062, 1070 (6th Cir. 1994) (quoting *Thigpen v. Cory,* 804 F.2d 893, 895 (6th Cir. 1986) (in turn quoting *Simmons v. United States,* 390 U.S. 377, 384 (1968)), *cert. denied,* 482 U.S. 918 (1987)), *cert. denied,* 515 U.S. 1145 (1995).  It is the likelihood of misidentification which violates the defendant's due process right.  *Neil v. Biggers,* 409 U.S. 188, 198 (1972).

The due process standard is premised on the concern that the trustworthiness of an eyewitness's identification can be easily undermined by improper police suggestion in circumstances where there already is a danger of misidentification because the witness is called upon to identify a stranger observed only briefly, under poor conditions, at a time of extreme emotional stress and excitement.  *See Manson v. Brathwaite,* 432 U.S. 98, 112 (1977); *Simmons,* 390 U.S. at 383-84; *United States v. Russell,* 532 F.2d 1063, 1066 (6th Cir. 1976).  Therefore, the determination of whether the eyewitness's identification testimony is admissible at trial turns on the reliability of that testimony.  *Manson,* 432 U.S. at 114; *see also Summitt v. Bordenkircher,* 608 F.2d 247, 251 (6th Cir. 1979), *aff'd sub nom. Watkins v. Sowders,* 449 U.S. 341 (1981).

As the Ohio Court of Appeals pointed out in the instant case, the court must engage in a two-step analysis in deciding whether an accused's right to due process has been violated through the use

22

of a pretrial identification procedure.  The court must first consider whether the procedure was unduly suggestive.  *Ledbetter,* 35 F.3d at 1070-71 (citing *Thigpen,* 804 F.2d at 895).  The defendant bears the burden of proving this element.  *Id.* at 1071 (citing *United States v. Hill,* 967 F.2d 226, 230 (6th Cir.), *cert. denied,* 506 U.S. 964 (1992)).

If the court finds that the procedure was unduly suggestive, it must next evaluate the "totality of the circumstances" to determine whether the pretrial identification was nevertheless reliable.  *Id.*; *see also Neil,* 409 U.S. at 199-200.  The Ohio Court of Appeals properly noted that the factors to be considered in assessing the reliability of the identification include:  (1) the opportunity of the witness to hear the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness when identifying the defendant; and (5) the length of time between the crime and the identification.  *Manson,* 432 U.S. at 114; *Neil,* 409 U.S. at 199-200; *United States v. Gatewood,* 230 F.3d 186, 193 (6th Cir. 2000), *cert. denied,* 534 U.S. 1107 (2002); *Ledbetter,* 35 F.3d at 1071.

Here, the Ohio Court of Appeals reasonably determined that even assuming that the pretrial identification procedure focusing only on petitioner as the potential suspect was unduly suggestive under the first step of the inquiry, the victim's identification of petitioner from the voice recording obtained by the police was nevertheless reliable upon review of the totality of the circumstances.  Petitioner has not cited or provided clear and convincing evidence to rebut the court's specific factual findings in support its conclusion.  Indeed, there is no evidence in the record even remotely suggesting that there were irregularities in the presentation of the voice recording to the victim a few days after the home invasion or that any other circumstances existed tending to refute the reliability of the victim's consistent and unequivocal identification of petitioner from the voice recording.  The

undersigned agrees with the Ohio appellate court's analysis, and adds that there is another factor favoring a finding of reliability in this case. Specifically, *before* the recording of petitioner's voice was even obtained, the victim mentioned to Detective Triggs that "the guy that was making the commands had an unusual voice;" when Triggs asked the victim "if he recognized the voice," the victim said "there was a guy that came a day or two before [the home invasion] asking for his father and all he had to give me was the name Chris." (*See* Doc. 7, Tr. 243).

Accordingly, in sum, the Court concludes that petitioner is not entitled to relief based on the claim alleged in Ground Two of the petition.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the constitutional claim alleged in Ground One, which this Court has concluded is waived and thus procedurally barred from review, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling.[4] A certificate of appealability also should not issue with respect to the state-law claim alleged in Ground One, as well as Grounds Two and Three, which were addressed on the merits herein, in the absence of a substantial showing that petitioner has stated a "viable claim of the denial of a constitutional right" or that the issues presented are "adequate to deserve encouragement to proceed further." *See Slack,* 529 U.S. at 475 (citing *Barefoot v. Estelle,*

---

[4]Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in Ground One. *See Slack,* 529 U.S. at 484.

463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date:  11/24/10

  cbc

/s J. Gregory Wehrman

J. Gregory Wehrman
United States Magistrate Judge

25

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Christopher Dickess,
    Petitioner

            vs                          Case No. 1:09cv635
                                        (Barrett, J.; Wehrman, M.J.)

Warden, Ross Correctional
Institution,
            Respondent

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **within 14 days** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.   If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **within 14 days** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

27